UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KAREN BROWN, as Administratrix of the Estate of the
Decedent BARRINGTON WILLIAMS and
KAREN BROWN, individually,

                                    Plaintiff,

      -against-

CITY OF NEW YORK,

                                    Defendant.

**COMPLAINT**

Index No.

<u>Jury Trial Demanded</u>

------------------------------------------------------------------------X

       Plaintiff KAREN BROWN, by and through her attorneys, Jason Leventhal, Esq., and Joshua Moskovitz, Esq., as and for her complaint alleges as follows:

## **PRELIMINARY STATEMENT**

       1.     This is a civil rights action in which plaintiff, Karen Brown, seeks relief for defendant's violations, under color of state law, of her deceased son's rights, privileges and immunities secured by 42 U.S.C. § 1983; and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

       2.     On September 17, 2013, at approximately 1:57 p.m., Decedent Barrington Williams was present at the 161st Street – Yankee Stadium Subway Station at River Avenue in Bronx County in the State of New York, when New York City Police Department Police Officer Joel Guach grabbed and restrained Decedent, causing Decedent to lose consciousness. Thereafter, NYPD Police Officers Guach, Robert O'Brien, Agenol Ramos, Carl Beard, and NYPD Sergeant John Fischetti, failed to perform any emergency life-

saving procedures, including cardio pulmonary resuscitation ("CPR"), on Decedent for more than ten minutes as Decedent lay on the floor, unconscious, not moving, not breathing, and restrained by rear-handcuffs.  It would have been obvious to any reasonable officer, and should have been obvious to Police Officers Guach, O'Brien, Ramos, and Beard, and Sergeant Fischetti that Decedent required emergency aid, including CPR.

3. This civil right actions seeks relief from the City of New York under *Monell v. Dep't of Soc. Servs of City of New York,* 436 U.S. 658 (1978), as the City was aware that NYPD police officers were either insufficiently trained to perform CPR on individuals in their custody and/or the City was aware that NYPD police officers, as a standard practice, would not perform CPR on individuals in their custody.  Despite such notice, the City failed to take reasonable measures to ensure that NYPD police officers perform CPR on individuals in their custody.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action on each and every one of her

claims for which jury trial is legally available.

## THE PARTIES

7. Plaintiff Karen Brown is the mother of Decedent Barrington Williams and has been appointed the legal administrator of Decedent's estate.

8. Defendant City of New York ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, and maintains the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9. At all times relevant herein, NYPD Police Officers Joel Guach, Robert O'Brien, Agenol Ramos, and Carl Beard, and NYPD Sergeant John Fischetti, acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

## FACTS

10. On September 17, 2013, at approximately 1:57 p.m., Decedent Barrington Williams was present at the 161st Street – Yankee Stadium Subway Station at River Avenue in Bronx County in the State of New York, when NYPD Police Officer Joel Guach grabbed and unlawfully restrained Decedent, causing Decedent to lose consciousness.

11. For the following ten minutes, Decedent remained on the floor, unconscious, not moving, not breathing and rear-handcuffed.

12. It would have been obvious to any reasonable police officer, and should have been obvious to Police Officers Guach, O'Brien, Ramos, and Beard, and Sergeant Fischetti, that Decedent required emergency life-saving aid.

13. Despite Decedent's obvious need for emergency aid, Police Officers Guach, O'Brien, Ramos, and Beard, and Sergeant Fischetti, did not perform any emergency life-saving procedures, including CPR, on Decedent.

14. The City failed to adequately train Police Officers Guach, O'Brien, Ramos, and Beard, and Sergeant Fischetti, on the constitutional requirement to render adequate and necessary emergency aid, including CPR, to individuals in police custody.

15. The NYPD officers' failure to perform CPR on Decedent is a direct result of the policies, customs and/or practices of the City, including, without limitation, the inadequate training, supervising, and disciplining of its employees.

16. The officers' failure to perform CPR is not an isolated incident. Similar unconstitutional conduct has been documented in civil actions filed in New York State and United States courts.

17. The City is aware (from prior lawsuits as well as notices of claims, and from investigations by the NYPD's Internal Affairs Bureau, the City's Civilian Complaint Review Board, and the City's Department of Investigation) that NYPD officers do not perform CPR on individuals who need CPR.

18. The City is aware that NYPD officers follow an unwritten rule that they do not perform CPR on an individual unless the individual who needs CPR is a law enforcement officer.

19. For example, on August 27, 2010, Brianna Ojeda, an eleven-year-old Brooklyn girl who needed CPR after suffering an asthma attack and losing consciousness, died after NYPD Police Officer Alfonso Mendez did not perform CPR on her.

20. On August 31, 2010, Officer Mendez testified, in an NYPD Patrol Guide 206-13 hearing arising from an NYPD Internal Affairs Bureau ("IAB") investigation into the death of Brianna Ojeda, that: he did not perform CPR on Ms. Ojeda because he "had no idea what to do," and he was never "qualified to do CPR." Office Mendez further testified that he graduated from the police academy in December 2005; that he only received "textbook training" on CPR; and that he never practiced CPR on a mannequin.

21. Thereafter, on August 18, 2014, Officer Mendez gave sworn testimony during his examination before trial in a civil suit brought by Brianna Ojeda's parents, that he didn't see any other police cadets in the police academy practice CPR on a mannequin; that after graduating from the police academy he didn't feel like he was qualified to perform CPR because he "didn't feel safe putting [his] hands on someone without actually knowing what [he was] doing"; and that in the five-year period from his December 2005 graduation from the police academy to the August 27, 2010 death of Brianna Ojeda, he did not receive any additional CPR instruction.

22. Officer Mendez further testified on August 18, 2014, that he was still working as a police officer and that he only "somewhat" knew how to perform CPR at that time.

23. Thus, almost four years after Office Mendez admitted to the NYPD that he had no idea what to do when he encountered Brianna Ojeda, and that he was not qualified

5

to perform CPR on Ms. Ojeda, Officer Mendez still was not properly trained to perform CPR.

24. In addition, on July 17, 2014, NYPD Police Officer Daniel Pantaleo restrained Eric Garner in Staten Island causing Garner to lose consciousness. Thereafter, Garner remained on the ground, unconscious, not moving, and rear-handcuffed. Despite Garner's obvious need for emergency aid, a group of at least nine NYPD officers stood around Garner for more than seven minutes and failed to perform any life-saving procedures, including CPR, on Garner despite having an opportunity to render such aid. *See* https://youtu.be/JpGxagKOkv8; https://youtu.be/vT66U_Ftdng.

25. Moreover, on November 20, 2014, NYPD Police Officers Peter Liang and Shaun Landau were patrolling the Pink Houses in Brooklyn, New York, when Officer Liang shot and killed Akai Gurley. Neither Liang nor Landau performed CPR on Gurley.

26. Thereafter, Officer Liang testified during his criminal trial earlier this year that, during his training in the police academy from July 9, 2013 through January 1, 2014: he was given instructions to perform CPR by a single instructor who instructed a group of approximately 300 police cadets; the instructors had approximately eight mannequins for the police cadets to use to practice performing CPR; and he did not get a chance to practice performing CPR on a mannequin because the instructors ran out of time.

27. During Liang's trial, Officer Landau testified that while he was in the NYPD police academy in 2013: he spent less than two minutes practicing CPR on a mannequin; he wasn't sure how to perform CPR; and he did not feel qualified to perform CPR.

28. NYPD Police Officer John Funk also testified at Liang's trial. Funk testified

6

that: he was in Liang's class at the academy; one instructor taught the CPR course to a group of 300 police cadets; the instructor had approximately eight mannequins for the 300 cadets to use to practice performing CPR; and that he did not practice performing CPR on a mannequin because the instructor ran out of time.

29. Significantly, NYPD Lieutenant Garfield Edmons, who supervised the officers who failed to perform CPR on the Decedent, testified on July 13, 2016 as follows:

> Q: Is it your understanding that the requirement to provide reasonable aid is satisfied by a police officer once they call for an ambulance?
> A: As long as they call for an ambulance, that's definitely part of the requirement. I think if they feel comfortable and they think they are qualified enough to give CPR, they do. That all depends on the officer's comfort level and confidence level. It depends on the situation.
> Q: Has there been any [NYPD] training with regard to the requirement to perform CPR on individuals?
> A: Not that I can remember specifically, no.
> Q: If a police officer does not perform CPR on an individual because they are uncomfortable putting their mouth on a civilian's mouth, would that officer be violating NYPD policy?
> A: I don't think so. To the best of my recollection, I don't think so.

30. The City has known, to a moral certainty, since at least 2010 when Officer Mendez testified during the NYPD IAB investigation arising from Brianna Ojeda's death, that improper training of its police officers has resulted in the deprivation of the constitutional rights of individuals as a result of its officers' failure to perform CPR when required. Despite such notice, the City has failed to take corrective action. This failure caused the NYPD officers to violate the Decedent's constitutional rights on September 17, 2013 when they failed to perform CPR on the Decedent.

31. All of the aforementioned acts of the City, their agents, servants and employees were carried out under the color of state law.

32. All of the aforementioned acts deprived Decedent of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America and in violation of 42 U.S.C. § 1983.

33. The acts complained of were carried out by the City's police officers in their capacity as police officers, with the entire actual and/or apparent authority attendant thereto.

34. The acts complained of were carried out by the City's police officers in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City and the New York City Police Department, all under the supervision of ranking officers of said department.

35. The City and its police officers, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

36. As a result of the foregoing, the Decedent was deprived of his constitutional rights.

37. As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A FIRST CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

38. Plaintiff repeats, reiterates and realleges each and every allegation contained

in foregoing paragraphs with the same force and effect as if fully set forth herein.

39. The defendant City, acting through its police department and through its police officers, maintained policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

40. The City failed to adequately train its police officers, either formally or informally, on the constitutional requirement to render adequate and necessary emergency aid, including CPR, to individuals who are in police custody and require emergency aid.

41. The City knew that its police officers were insufficiently trained to perform CPR and would not perform CPR on individuals in violation of the constitutional rights of individuals. The City knew that its police officers would be constitutionally required to perform CPR on individuals in their custody and therefore the City knew of the need to train and instruct its officers on the constitutional requirements to perform CPR. Despite that knowledge, the City failed to take corrective action to ensure that NYPD officers provided constitutionally required emergency aid to individuals in police custody.

42. Upon information and belief, the City maintained no written guidelines on the constitutional requirement to perform CPR on individuals in police custody.

43. The failure of the City to train its police officers or provide guidelines to its officers on the constitutional requirement to perform CPR on individuals in police custody amounts to deliberate indifference to the rights of persons in police custody.

44. The City implemented, enforced, encouraged, sanctioned and/or ratified policies, practices, and/or customs of failing to train its police officers and failing to implement guidelines on the constitutional requirement to perform CPR on individuals in

9

police custody.

45. By implementing, enforcing, encouraging, sanctioning and/or ratifying these policies, practices, and/or customs, the City caused the Decedent to be deprived of the constitutional rights guaranteed to every citizen of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

46. As a result of the foregoing, Decedent suffered the injuries and damages alleged herein.

47. As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief against the defendant:

(A) a declaration that defendant City violated the constitutional rights of the Decedent, Barrington Williams;

(B) full and fair compensatory damages in an amount to be determined by a jury;

(C) reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as appears just and proper.


Dated: September 17, 2016
       Brooklyn, New York       By:    /s
                                       Jason Leventhal (JL1067)
                                       Leventhal Law Group, P.C.
                                       45 Main Street, Suite 528
                                       Brooklyn, New York 11201
                                       (718) 556-9600

Dated: September 17, 2016
       New York, New York       By:    s/
                                       Joshua S. Moskovitz
                                       Bernstein Clarke & Moskovitz PLLC
                                       222 Broadway, 19th Floor
                                       New York, New York 10038
                                       (212) 321-0087

                                       *Attorneys for Plaintiff*